IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TARA H..[1], | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:21-CV-00592 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Tara H. ("Tara") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Tara alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess her mental and physical impairments and to assess her allegations regarding her symptoms. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Tara's Motion for Summary Judgment (Dkt. 17).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Tara failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Tara filed for DIB in April 2019, claiming that her disability began on May 31, 2017,[3] due to post traumatic stress disorder, major depressive disorder, anxiety, and attention deficit hyperactivity disorder ("ADHD"). R. 88, 103. Tara's date last insured is March 31, 2025; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 46; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] At the hearing before the ALJ, Tara amended her onset date to November 16, 2018. R. 69.

§§ 404.101(a), 404.131(a). The state agency denied Tara's applications at the initial and reconsideration levels of administrative review. R. 88–99; 102–16. On March 24, 2021, ALJ Jon Lyons held a hearing to consider Tara's claim for DIB. R. 68–87. Counsel represented Tara at the hearing, which included testimony from vocational expert Asheley Wells. On June 9, 2021, the ALJ entered his decision analyzing Tara's claim under the familiar five-step process[4] and denying her claim for benefits.[5] R. 45–59.

The ALJ found that Tara suffered from the severe impairments of obesity, carpal tunnel syndrome, ulnar neuropathy, anemia, depression, ADHD, and post-traumatic stress disorder. R. 48. The ALJ found Tara was mildly limited in the broad functional areas of understanding, remembering, or applying information, and adapting and managing oneself. R. 50–51. The ALJ found Tara was moderately limited in the broad function areas of interacting with others and concentrating, persisting, or maintaining pace. Id.

The ALJ determined that Tara's mental and physical limitations, either individually or in combination, did not meet or medically equal a listed impairment. R. 48. The ALJ specifically considered listing 1.18 (abnormality of a major joint in any extremity), listing 11.14 (peripheral neuropathy), listing 7.18 (repeated complications of hematological disorders), SSR 19-2p[6]

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Tara was 42 years old on her alleged amended onset date, making her a younger person under the Act. R. 58.

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding

(obesity), listing 12.04 (depressive, bipolar, and related disorders), listing 12.11 (neurodevelopmental disorders), and listing 12.15 (trauma- and stressor-related disorders).

The ALJ determined that Tara retained the residual functional capacity ("RFC") to perform sedentary work. R. 51. Tara can lift 10 pounds occasionally and can handle less than 10 pounds frequently. Id. She can sit for six out of eight hours and can stand and walk for two out of eight hours. Id. Tara can have no constant use of her hands and requires the ability to change positions as needed. R. 52. She can occasionally stoop, bend, crouch, and crawl. Id. Tara can occasionally interact with coworkers, supervisors, and the public. Id. She cannot engage in work with complex instructions, procedures, or processes. Id. The ALJ determined that Tara had no past relevant work but could perform jobs that exist in significant numbers in the national economy, such as addressing clerk, document preparer, and lens inserter. R. 58–59. Tara appealed the ALJ's decision, and the Appeals Council denied her request for review on October 19, 2021. R. 1–4.

## ANALYSIS

Tara alleges that the ALJ failed to properly assess both her mental impairments and her physical impairments and failed to consider her subjective evidence.

---

on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

**A. Medical History Overview**

1. <u>Medical Treatment</u>[7]

    a. Foot and Ankle

In August 2016, an X-ray of Tara's left foot and ankle showed an obliquely oriented fracture of the distal fibula with mild apex lateral angulation and slight widening of the ankle mortise. R. 1391. Dr. Jesse Seamon, M.D., performed surgery on Tara's ankle in September 2016, which was successful, and Dr. Seamon instructed her in December 2016 to return to full activity as tolerated. R. 1368, 1382–83. Tara continued to complain of ankle pain in 2018, and Dr. Seamon diagnosed sural nerve irritation and peroneal tendinosis, which Dr. Seamon recommended treating with medication and a guided injection. R. 1271, 1278. In 2018 and 2019, Tara saw a pain management specialist and other doctors who diagnosed her with chronic pain of the left ankle and nerve pain and referred her to physical therapy and encouraged weight loss. R. 666, 1219, 1246. The pain management specialist found that Tara's gait, active range of motion, and strength were normal. R. 1218, 1245.

    b. Ulnar Neuropathy and Carpal Tunnel Syndrome

In May 2019, Tara presented to Dr. Clement Elechi, M.D., with pain and numbness. R. 890. Tara had a normal gait and strength. <u>Id.</u> Dr. Elechi ordered an EMG, which showed bilateral carpal tunnel syndrome, moderate on the left and mild on the right, and left ulnar neuropathy. R. 892, 894. Tara received steroid injections in both wrists in February 2020 and had surgery in May 2020. R. 2082, 2167. Tara experienced significant relief and had improvements in pain, numbness, and tingling after the surgery. R. 2073. She returned to work with the restrictions of no lifting, pushing, or pulling more than 10 pounds with her hands. R. 2070.

---

[7] Tara has a history of several other conditions, including pain in her back and hips. R. 2107.

    c. Anemia

In July 2019, Tara presented to the emergency department with complaints of chest pain, fatigue, weakness, and dizziness. R. 517. Doctors diagnosed Tara with anemia, and she received iron infusions to treat her condition. R. 661, 1590, 1594, 2087. Even with treatment, Tara reported continued fatigue. R. 525, 922, 1590, 2091.

    d. Mental Health

Tara has a history of depression, ADHD, and post-traumatic stress disorder. Tara has been admitted to the hospital several times for suicidal ideations, overdoses, and cutting. R. 581, 618, 726, 1303. She attended therapy frequently to help with her diagnoses and took medication. R. 418, 425, 451, 462, 500, 1060, 1987. Tara often complained to her providers of overwhelmed or anxious mood, irritability, memory issues, and trouble focusing and concentrating. R. 435, 470, 486, 500, 1120, 1139, 2022, 2231. However, Tara's providers reported that she had intact memory, sufficient attention and concentration, and had periods of improved symptoms. R. 437, 478, 707, 1167, 1992. 2231.

  2. <u>Medical Opinions</u>

In September 2019 and December 2020, respectively, state agency physicians William Rutherford, Jr., M.D., and Robert McGuffin, M.D., reviewed the record and found Tara's physical health impairments were non-severe. R. 88–99; 102–16. The ALJ found these opinions not persuasive. R. 56. The ALJ reasoned that Tara had bilateral carpal tunnel syndrome and left ulnar neuropathy with entrapment in the left elbow, required four iron infusions for her anemia, and was obese. <u>Id.</u> The ALJ concluded that "[t]hese findings support that [Tara] has severe physical health impairments that cause more than minimal vocationally relevant limitations." <u>Id.</u>

6

In September 2019 and December 2020, respectively, state agency psychologists Howard Leizer, Ph.D., and Eric Oritt, Ph.D., found Tara had mild limitations in the ability to understand, remember, or apply information and moderate limitations in the ability to interact with others and concentrate, persist, or maintain pace. R. 94, 111, Dr. Leizer and Dr. Oritt found Tara had no limitations in the ability to adapt and manage oneself. Id. The ALJ found these opinions generally persuasive but disagreed that Tara had no limitations in the ability to adapt or manage oneself. R. 56–57. The ALJ reasoned that Tara's hospitalization in September 2019 for depression and suicidal ideation "supports a greater degree of limitation in adapting and managing oneself." Id.

### B. Mental Impairments under SSR 96-8P

Tara argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Tara asserts that the ALJ failed to explain how his RFC findings account for Tara's moderate limitations in concentration, persistence, or pace, and in interacting with others. Pl.'s Br. at 27–28, Dkt. 18. Tara also argues that the ALJ failed to consider Dr. Leizer's opinion that she could not handle changes in the work setting. Id. at 25. Tara further argues that because the ALJ did not consider her moderate limitations, the ALJ failed to ask the vocational expert proper hypothetical questions. Id. at 29. The Commissioner counters that "[t]he ALJ's decision comports with the law" and that he "supported his RFC assessment with an extensive explanation." Def.'s Br. at 9, 11, Dkt. 20.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011).  The ALJ "must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176

(emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ explained why Tara's moderate limitations in concentration, persistence, or pace and in interacting with others did not translate into a limitation in the RFC beyond that imposed. Addressing Tara's moderate limitations in concentration, persistence, or pace, the ALJ specifically acknowledged that Tara often presented with depressed mood, her psychomotor activity was decreased at times, and she received treatment for attention deficit disorder. R. 51. The ALJ also noted that Tara testified that her mental impairments affected her ability to "remember, complete tasks, concentrate, understand, [and] follow instructions." R. 52. However, the ALJ noted that "on examination[,] her attention and concentration were adequate." R. 51. Further, the ALJ noted that providers found that Tara had an adequate memory, "fair to good" knowledge, and average intelligence. R. 54, 56. The ALJ extensively cited to Tara's medical record when discussing her mental health history and instances of adequate attention, concentration, and memory. R. 52–54. The ALJ's conclusion that Tara has moderate limitations in concentration, persistence, or pace is supported by the medical opinions of both Dr. Leizer and Dr. Oritt. R. 56–57. The ALJ also specifically cited Dr. Oritt's conclusion that Tara is capable of simple, routine tasks to support his RFC. R. 57.

Tara also argues that the ALJ failed to address Dr. Leizer's opinion that "[c]hanges in work settings would likely be difficult for her given her emotional illness that is compromising her concentration." Pl.'s Br. at 25, Dkt. 18. The ALJ's conclusion that Dr. Leizer's opinion was persuasive did not obligate the ALJ to adopt wholesale each of Dr. Leizer's individual findings. "[A]n ALJ does not have to articulate, or expressly state, his reasoning regarding each opinion or finding from every medical source." <u>Angela U. v. Kijakazi</u>, No. 2:22-cv-34,

9

2022 WL 3207455, at *9 (E.D. Va., July 19, 2022) (quoting Godfrey v. Kijakazi, No. CV 6:20-2504, 2021 WL 8014681, at *7 (D.S.C. Sept. 10, 2021). Dr. Leizer concluded that Tara had no limitations in adapting or managing herself, and Dr. Oritt concluded the same. R. 94, 111. The ALJ, however, found that Tara had mild limitations in her ability to adapt or manage herself based on her asserted difficulties of dressing and bathing herself and her hospitalization in September 2019 for depression and suicidal ideation. R. 51. However, the ALJ also noted that Tara worked part-time, was a member in her church, and "was able to manage her symptoms with outpatient therapy and medication management." Id. The ALJ properly considered Dr. Leizer's opinion in formulating his RFC.

Addressing Tara's moderate limitation in interacting with others, the ALJ specifically acknowledged that Tara "alleged that she has difficulty engaging in social activities, getting along with others, and spending time in crowds." R. 50. The ALJ also noted that Tara had anxious mood at times and presented as irritable, agitated, or angry at some appointments. Id. However, the ALJ noted that Tara "was active in her church community and worked on a part-time basis." R. 54. Tara argues that the ALJ made "a conclusory statement that because [Tara] attended church and worked part time she can have no more than occasional interactions with others[.]" Pl.'s Br. at 18, Dkt. 28. The ALJ's conclusion that Tara has moderate limitation in interacting with others, however, is also supported by the medical opinions of both Dr. Leizer and Dr. Oritt. R. 56–57. Further, the ALJ extensively cited to Tara's medical record which indicated that Tara was generally cooperative with her providers, had good eye contact, and served as an extra in a local movie. R. 53. The ALJ did not only use Tara's church activity and part-time work to support his RFC, but instead, utilized these activities in conjunction with several others to support his RFC.

10

Contrary to Tara's argument, the ALJ explained his reasoning and the RFC, including specific references to the medical records and opinions. The ALJ explained that because the record shows difficulty in concentration, persistence, or pace, and in interacting with others, Tara has been limited to jobs with no more than occasional interaction with coworkers, supervisors, and the public, and no complex instructions, procedures, or processes. R. 52.[8]

Tara further asserts that because the ALJ did not consider her moderate limitations in concentration, persistence, or pace, and in interacting with others, the ALJ failed to "pose any hypothetical questions to the vocational expert that included these limitations." Pl.'s Br. at 29, Dkt. 18. At the hearing, the ALJ asked the vocational expert, Asheley Wells, the following question:

> Ms. Wells, if you consider a person of the claimant's age, education, and work experience who . . . non-exertionally would be limited to not more than occasional interactions with coworkers, supervisors, or the public. And the individual would be engaged in no complex instructions, procedures, or processes. Would that individual return to any prior work? . . . Would there be other work?

R. 84. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Here, the ALJ based his hypothetical on the evidence in the record. As discussed, the ALJ acknowledged that the record indicated that Tara had difficulty with concentration, persistence, or pace, and in interacting with others. Those

---

[8] Tara argues that the ALJ failed to address her ability to sustain work over an eight-hour day. Pl.'s Br. at 24, 27, Dkt. 18. The purpose of the RFC is to assess "an individual's ability to do sustained work-related physical and metal activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2. Here, the ALJ determined that Tara could perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the evidence supporting the RFC determinations.

11

limitations were addressed in the ALJ's hypothetical when asking for jobs that had limited interactions with others and no complex instructions, procedures, or processes. The ALJ's hypothetical limitations were supported by the record and considered Tara's impairments.

Tara's assertion that the ALJ did not explain how the RFC findings address or accommodate her moderate limitations with concentration, persistence, or pace, or interacting with others is unfounded. The ALJ provided a lengthy narrative discussion of Tara's allegations, treatment records, and opinion evidence regarding her mental health limitations. The ALJ considered Tara's allegations of difficulty being around people and with concentration, persistence, and pace at length in his opinion. The ALJ explained how his RFC is supported by Tara's mental health treatment records and carefully analyzed each facet of her mental impairments. Accordingly, I recommend finding that the ALJ's assessment of Tara's impairments was sufficient under SSR 96-8P.

### C. Function-by Function-Analysis

Tara argues that the ALJ did not make specific findings, as required by SSR 98-P, regarding whether her impairments would cause pain that "would result in a need to take breaks during the day or would result in an unacceptable number of absences from work." Pl.'s Br. at 32, Dkt. 18. Tara argues that the ALJ did not conduct a function-by-function analysis. Id. Tara points to difficulty with her hands locking up and pain and numbness in her right arm, difficulty reaching overhead and holding items, and the need to lie down several times a day.[9] Id. at 31. The Commissioner counters that "the ALJ provided an RFC assessment that was more generous

---

[9] Tara also points to her inability to walk for more than 10 to 15 minutes and her inability to sit for more than 30 minutes. Pl.'s Br. at 31, Dkt. 18. However, Tara seems to find the ALJ's discussion of her ability to sit, stand, and walk sufficient. Tara says, "The ALJ failed to address [her] allegations regarding her need to take breaks and rest during the day and that she would be unable to maintain regular attendance at work. Instead, the ALJ only focused upon [Tara]'s ability to sit, stand, and walk without considering the other functional limitations imposed by her physical impairments." Id. at 32.

12

than that offered by two state agency medical consultants, who found that [Tara] had no physical limitations at all." Def.'s Br. at 15, Dkt. 20.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

13

Here, the ALJ properly explained how the RFC accounts for Tara's physical impairments and provided the necessary medical and non-medical facts and evidence to support his conclusions. Addressing Tara's ability to use her arms and hands, the ALJ stated:

> An EMG revealed that the claimant had bilateral carpal tunnel syndrome and left ulnar neuropathy with entrapment in the left elbow. She underwent a left carpal and cubital release on May 28, 2020. Her examinations before and after surgery showed intact motor strength and function. Two months after her surgery, she had full use of her arms with no lifting over 10 pounds with the left upper extremity. This supports the claimant can perform a range of sedentary exertional activity.

R. 55. Further, the ALJ noted that Tara had significant relief of her numbness, tingling, and pain after her May 28, 2020 surgery. Id. While Tara testified that she experiences pain and numbness in her right arm and hand, R. 76–78, the medical record, even as summarized by Tara, includes very few references explicitly to the right hand and arm. While doctors diagnosed Tara with bilateral carpal tunnel syndrome, R. 2085, Tara only points to one instance where she received an injection in her right wrist to help with her carpal tunnel syndrome and hand pain. Pl.'s Br. at 18, Dkt. 18. Tara does not cite any restrictions given by doctors for the use of her right hand or arm. The ALJ also considered the testimony of the state agency doctors who found that Tara's physical health impairments were non-severe. R. 56. The ALJ disagreed with these findings and specifically cited to Tara's carpal tunnel syndrome and left ulnar neuropathy as severe health impairments. Id.

Addressing Tara's need to take breaks during the day, the ALJ acknowledged that Tara complained of fatigue and has anemia. R. 55. However, the ALJ noted that Tara reported varying levels of fatigue and that he "considered the claimant's fatigue in limiting her to sedentary exertional activity." Id. The ALJ also considered the testimony of the state agency doctors who found that Tara's physical health impairments were non-

14

severe. R. 56. The ALJ disagreed with these findings and specifically noted that Tara has received four iron infusions for her anemia. Id.

Contrary to Tara's contentions, the ALJ provided a detailed summary of Tara's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Tara's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### D. Subjective Allegations

Tara argues that the ALJ's assessment of her allegations is not supported by substantial evidence. Tara claims that the ALJ ignored or minimized several pieces of evidence from the record and that the ALJ failed to qualify the extent to which Tara performed daily activities. Pl.'s Br. at 35–36, Dkt. 18. The Commissioner counters that the ALJ followed the regulatory evaluation process. Def.'s Br. at 16–17, Dkt. 20.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably

15

produce the alleged symptoms, such as pain.[10] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ found that Tara's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 52. However, the ALJ found that Tara's statements concerning the intensity, persistence, and limiting effect of those symptoms were not consistent with the record. Id. Tara first argues that the ALJ ignored or minimized ten pieces of evidence in the record,[11] which call into question the ALJ's conclusion that Tara "was cooperative, had adequate memory, had mostly good attention and concentration, and was able to care for her personal needs, along with evidence showing that [she] was active in her church community and

---

[10] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

[11] This evidence includes: (1) Tara's therapist noted in January 2019 that she appeared very overwhelmed and down; (2) mental status examination at medication management session in January 2019 documenting overwhelmed mood, poor judgment, and circumstantial thoughts at times; (3) evaluation in May 2019 documenting some impaired recent memory; (4) examination in August 2019 documenting anxious mood and constricted affect; (5) hospitalization from September 17, 2019 through September 23, 2019, for worsening depression with suicidal ideation and cutting behaviors; (6) examination in March 2020 documenting constricted affect; (7) examination in June 2020 documenting anxious and depressed mood and impaired judgment; (8) examination in October 2020 documenting depressed mood, constricted/blunted affect and fair insight and judgment; (9) examination in January 2021 documenting blunted affect, lack of insight, and fair judgment; (10) examination in March 2021 documenting angry mood, constricted affect, fair attention and concentration, and impaired judgment and lack of insight. Pl.'s Br. at 34, Dkt. 18.

worked on a part-time basis." Pl.'s Br. at 34, Dkt. 18. Contrary to Tara's assertion, the ALJ did not ignore any of these appointments. Although Tara argues that the ALJ minimizes evidence inconsistent with his conclusion, the ALJ does not have to address every piece of inconsistent evidence, Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at * 7 (M.D.N.C. June 3, 2015); see also Brittain v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made.

Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Tara has done no more than identify instances that she did not think were discussed as completely as she would like by the ALJ. Without more, Tara has not shown that the ALJ ignored or misrepresented her subjective allegations.

Tara also points to Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017) and similar cases to support her argument that "the ALJ failed to qualify the extent" to which Tara performed her daily activities, such as her involvement in church activities and her part-time job. Pl.'s Br. at 35, Dkt. 18. Tara further argues that the ALJ "does not provide an explanation as to how the activities [he] cited establish [Tara] can perform substantial gainful work activities on a sustained basis over the course of an eight-hour workday." Id. at 37. Tara emphasizes her February 4, 2020

17

function report that states that her husband helps her with preparing meals and doing household chores, her husband manages all the finances, and she has limited interaction with her family and others. Id. at 35–36. Tara additionally points to her testimony that she stopped her part-time job "because it had become too physically challenging for her and that her anxiety had made it increasingly difficult to deal with the customers and her co-workers" and that she avoids social interaction, has difficulty concentrating, and is quick to anger. Id.

The ALJ repeatedly acknowledged Tara's severe physical impairments, including her anemia, bilateral carpal tunnel syndrome, obesity, and chronic left ankle pain. R. 55–56. The ALJ also acknowledged her memory, concentration, and interaction issues throughout his evaluation of the medical record. R. 50–54. Further, unlike in Brown, the ALJ pointed to more than Tara's daily activities to discount her subjective allegations.[12] Beyond the activities of daily living, the ALJ noted that medical evidence was inconsistent with Tara's allegations about the extent of her impairments. R. 52. Tara's allegations of disability were also inconsistent with the state agency doctors, who found Tara's physical impairments were non-severe and that she had no limitations in the ability to adapt and manage oneself, had mild limitations in the ability to understand, remember, or apply information, and had moderate limitations in the ability to interact with others and concentrate, persist, or maintain pace. R. 56–57. Finally, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d

---

[12] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

18

635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Tara's subjective complaints with substantial evidence, and that Tara is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Thomas T. Cullen, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 3, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge