IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TARA H., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21-cv-00592 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KILOLO KIJAKAZI, | ) | By:   Hon. Thomas T. Cullen |
| Acting Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

This social security disability appeal was referred to the Honorable Robert S. Ballou,

United States Magistrate Judge,[1] for proposed findings of fact and a recommended disposition

under 28 U.S.C. § 636(b)(1)(B). The magistrate judge filed a report and recommendation

("R&R") on February 3, 2023, recommending that this court deny Plaintiff Tara H.'s ("Tara")

motion for summary judgment, grant the Commissioner's motion for summary judgment, and

affirm the Commissioner's final decision. Tara has filed timely objections to the R&R, seeking

this court's review. For the following reasons, the court will overrule Tara's objections, adopt

Judge Ballou's R&R in its entirety, and grant the Commissioner's summary judgment motion.

## I.   BACKGROUND

On April 16, 2019, Tara filed an application for Supplemental Security Income ("SSI")

benefits pursuant to Title II of the Social Security Act ("the Act"). (R. 88; 188); *see* 42 U.S.C.

§§ 401–433. In her application, Tara alleged that she was disabled as of May 31, 2017, due to

Post Traumatic Stress Disorder, Major Depressive Disorder, Anxiety, and Attention

---

[1] Judge Ballou was confirmed as a United States District Judge on March 7, 2023.

Deficit/Hyperactivity Disorder ("ADHD"). (*See* R. 88.) Disability Determination Services ("DDS") denied Tara's application at the initial and reconsideration levels of state agency review. (R. 88–99; 102–116.)

Tara requested a hearing before an Administrative Law Judge and, on March 24, 2021, appeared with her attorney before Administrative Law Judge Jon C. Lyons ("the ALJ") (the "March 24 Hearing"). (R. 68–87.) Both Tara and a vocational expert, Asheley Wells, testified at the hearing. (*Id.*) At the March 24 Hearing, Tara amended her alleged onset date to November 16, 2018. (R. 69.) Also at the March 24 Hearing, at Tara's request, the ALJ agreed to hold open the record for two weeks until Tara submitted to him additional and updated medical records. (R. 72, 86.)

In a decision dated June 9, 2021 (the "June 9 Decision"), the ALJ determined that Tara was not disabled within the meaning of the Act from November 16, 2018 through the date of the decision. (R. 45–59.)

In his written decision, the ALJ found that Tara suffered from several severe impairments; specifically, obesity, carpal tunnel syndrome, ulnar neuropathy, anemia, depression, ADHD, and post-traumatic stress disorder. (R. 48, citing 20 C.F.R. § 404.1520(c).) He also found that these severe impairments significantly limit Tara's ability to perform basic work activities. (R. 48.) And he considered Tara's non-severe conditions. (*Id.*) For example, in reviewing the record, the ALJ found that Tara's bronchitis, pneumonia, urinary tract infection, restless leg syndrome, left ankle pain and weakness post-surgery, mild joint space narrowing and osteophyte formation in her sacroiliac joints, spurs in the feet, and reports of low back pain and fatigue, were non-severe impairments causing "no more than minimal vocationally

relevant limitations, have not met the durational requirement, and/or are not fully supported by the evidence of record." (*Id.*)  Her headaches were non-severe, but he nevertheless accounted for them in his RFC finding. (*Id.*)

The ALJ determined that Tara was mildly limited in understanding, remembering, or applying information; that she was moderately limited in interacting with others; that she had moderate limitations regarding concentrating, persisting, and maintaining pace; and that she was mildly limited in her ability to adapt of manage herself. (R. 50–1.) In sum, he expressly considered all of Tara's impairments, including the non-severe ones, when assessing her Residual Functional Capacity ("RFC")[2]. (R. 48.)

Ultimately, the ALJ found that Tara does not have an impairment or combination of impairments that meet or exceed a listed impairment. (R. 48–49; *see* 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926)).[3] In doing so, he specifically considered listings and rulings covering the gamut of Tara's conditions and allegations:

- Listing 1.18                    (abnormality of a major joint(s) in any extremity);
- Listing 11.14                   (peripheral neuropathy);
- Listing 7.18                    (repeated complications of hematological disorders);
- SSR-19.2p                       (obesity);
- Listing 12.04                   (depressive, bipolar, and related disorders);
- Listing 12.11                   (neurodevelopmental disorders); and
- Listing 12.15                   (trauma- and stressor-related disorders).

---

[2] A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

[3] The ALJ followed the Social Security Administration's five-step sequential process to determine whether Carly was disabled and when, *see* 20 C.F.R. § 416.920(a), which is thoroughly described in his June 9 Decision.

(R. 49–50.) After "careful consideration of the entire record," the ALJ concluded that Tara

had the RFC to perform sedentary work under certain conditions. Specifically, he concluded

that Tara had the RFC

> to perform sedentary work as defined in 20 CFR [§] 404.1567(a)
> except [she] can lift 10 pounds occasionally, can handle less than
> 10 pounds frequently, can sit six of eight hours, and can stand
> and walk two of eight hours. [Tara] can have no constant use of
> the hands. She would require the ability to change positions as
> needed. [Tara] can have no more than occasional stooping,
> bending, crouching, and crawling. [Tara] can have no more than
> occasional interaction with coworkers, supervisors, and the
> public. [Tara] can engage in no complex instructions, procedures,
> or processes.

(R. 51–2.) Relying on his conclusions, the ALJ determined that Tara could not have performed

any past relevant work since those jobs all exceeded her RFC, but that, considering her age,

education, work experience, and RFC, she was capable of adjusting to and performing other

jobs that exist in significant numbers in the national economy, including Addressing Clerk,

Document Preparer, and Lens Inserter. (R. 58-9 (citing the Medical Vocational Guidelines,

C.F.R. Part 404, Subpart P, Appendix 2, and referencing the vocational expert's testimony).)

Accordingly, the ALJ found that Tara was "not disabled" within the meaning of the Act. (*See*

R. 59.)

Following this decision, Tara requested Appeals Council review and remand, but it was

denied. (R. 1–4.)  The ALJ's June 9, 2021 Decision, therefore, became the Commissioner's

final decision. (*Id.*)

On November 17, 2021, Tara filed the instant suit challenging the Commissioner's final

decision. (Compl. [ECF No. 2].) By standing order and under the authority of 28 U.S.C. §

636(b)(1)(B), the court referred the case to the United States Magistrate Judge for

- 4 -

consideration. Tara filed a motion for summary judgment (ECF No. 17) and the Commissioner's summary judgment motion followed (ECF No 19). On February 3, 2023, Magistrate Judge Ballou filed his R&R recommending that the court grant the Commissioner's motion, deny Tara's motion, and affirm the decision of the Commissioner. (ECF No. 21.) Tara filed timely objections (ECF No. 22) and the Commissioner responded in opposition (ECF No. 23). Accordingly, this matter is ripe for review.

## II.    STANDARDS OF REVIEW

### A.  District Court Review of Magistrate Judge Decision

Federal Rule of Civil Procedure 72(b) provides that, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." The objection requirement set forth in Rule 72(b) is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of the objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id.* The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations," de novo review is not required. *Diprospero v. Colvin*, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (cleaned up) (quoting *Howard Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." *Camper v. Comm'r of Soc. Sec.*, No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), *aff'd*, 373 F. App'x 346 (4th Cir.); *see Midgette*, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only those portions of the report or specified proposed findings or recommendations to which objection is made.") (cleaned up). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Technologies*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012); *see also Arn*, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .").

Simply put, rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Objections that simply reiterate arguments raised before the magistrate judge are construed as general objections to the entirety of the report and recommendation. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in *Veney*:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Howard* [*v. Sec'y of Health & Human Servs.*], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks"; instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. *Id.*

### B.  Judicial Review of Social Security Determinations

It is not the role of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, *Richardson v. Perales*, 402

U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. *Perales*, 402 U.S. at 401; *Laws*, 368 F.2d at 642. "It means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Perales*, 402 U.S. at 401.

### III.   TARA'S OBJECTIONS[4]

The objection process is not an opportunity for Tara to take a "second bite at the apple." *Veney*, 539 F. Supp. 2d at 846. Many of her objections could be overruled because they either improperly reiterate arguments that were made to, and addressed by, the magistrate judge (*compare, e.g.,* Pl.'s Br. Supp. Mot. Summ. J. at 24–31 [ECF No. 18] *with* Pl.'s Obj. p. 1–4 [ECF No. 22]) or ask this court to reweigh the evidence in her favor, particularly as it relates to Tara's mental impairments. Nevertheless, the court will endeavor to address each of Tara's objections.

Broadly speaking, Tara makes three overarching objections. First, she contends that the ALJ erred as it related to his consideration of her mental impairments. Second, she objects to the manner and content of the ALJ's function-by-function analysis. And third, she objects

---

[4] Detailed facts about Tara's impairments and medical and procedural history can be found in the R&R (ECF No. 21) and administrative transcript (ECF No. 10), and will not be repeated here, unless relevant to the objection under consideration.

to the ALJ's treatment of her subjective allegations. Within each of these objections, Tara takes issue with, essentially, every finding of the ALJ and recommendation of the magistrate judge that is contrary to her position. Most of these objections are meritless, as evidenced by the lack of analysis and effort put into making them before this court. The portion of her objections that are not general objections and that warrant review are addressed below.

## A.  Objections Related to Tara's Mental Impairments Under SSR 96-8p

In her first objection, Tara argues that Magistrate Judge Ballou "erred in concluding the ALJ explained why plaintiff's moderate limitations in concentration, persistence, or pace and in interacting with others did not translate into limitations beyond that imposed." (Pl.'s Obj. at 1.) Although oddly phrased, the court interprets this to mean that her moderate limitations in concentration, persistence, and pace were not appropriately addressed in her RFC. While the court agrees that this is a close question under the applicable standard of review, the ALJ's inclusion of an appropriate limitation in Tara's RFC to address this moderate limitation is adequately explained and supported by substantial evidence.

The ALJ determined, consistent with several medical opinions (*see* R. 56–58), that Tara had moderate limitations in concentrating, persisting, and maintaining pace (R. 51, 57). As a general rule, when a claimant is found to have limitations in concentration, persistence, and pace, an ALJ "cannot summarily account" for those limitations "'by restricting the hypothetical question to simply, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). But there is no "categorical rule that requires an ALJ to always include moderate limitations in

concentration, persistence, or pace as a specific limitation in the RFC. To the contrary, [the Fourth Circuit] explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace . . . does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638).

Here, the ALJ included a limitation in Tara's RFC directed to the moderate limitations he found she has in concentration, persistence, and pace, as well as her moderate limitations in interacting with others. To account for these limitations, the ALJ excused Tara from performing complex tasks or having more than occasional interaction with others. (R. 52, 54.) After a through review of her mental health records, the ALJ stated:

> While the claimant had ongoing complaints of mood fluctuation, irritability, and anger issues, her treatment notes show that she was cooperative, had adequate memory, had mostly good attention and concentration, and was able to care for her personal needs. She was active in her church community and worked on a part-time basis. The undersigned finds that the claimant is precluded from performing complex tasks and can have no more than occasional interaction with others.

(R. 54.) The ALJ did not "ignore[e] (without explanation) [Tara's] limitation in her ability to maintain her concentration, persistence, or pace . . . ." *Mascio*, 780 F.3d at 633. Rather, he directly considered it and added a limitation to her RFC to account for it. That falls squarely within the requirement.

Insofar as Tara contends the ALJ's analysis of her mental RFC fails to satisfy Social Security Ruling ("SSR") 96-8p, the court disagrees. SSR 96-8p was intended to "state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI" of the Act. SSR 96-8p, 1996 WL 374184, at *1. "Ordinarily, RFC is an assessment of an

individual's ability to do sustained work-related physical and mental activities in a work setting

on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent

work schedule." *Id.* As it relates to Tara's objection, SSR 96-8p requires that an ALJ's RFC

determination

> include a narrative discussion describing how the evidence
> supports each conclusion, citing specific medical facts (e.g.,
> laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations). In assessing RFC, the adjudicator must
> discuss the individual's ability to perform sustained work
> activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work
> schedule), and describe the maximum amount of each work-
> related activity the individual can perform based on the evidence
> available in the case record. The adjudicator must also explain
> how any material inconsistencies or ambiguities in the evidence
> in the case record were considered and resolved.

*Id.* at *7.

The ALJ's discussion contains extensive citations to Tara's medical records.[5] (*See* R.

52–54.) He also reviewed the medical opinions of several physicians, finding their opinions

generally persuasive. (*See* R. 56–57.) For example, both Drs. Howard Leizer and Eric Oritt

found that Tara had "moderate limitations" relating to concentration, persistence, and pace,

as well as in interacting with others. The ALJ discussed their findings in detail, his bases for

finding them persuasive, and cited to those parts of Tara's medical records that supported

their conclusions. Because substantial evidence supports those conclusions, Tara's objections

will be overruled.

---

[5] Notably, Tara does not point to any specific record that was overlooked or ignored. While she takes issue with the ALJ's interpretation of some of those records (*see, e.g.*, Pl.'s Obj. at 1), it is not the court's job to reweigh conflicting evidence. *Hunter*, 993 F.2d at 34.

Next (and relatedly), Tara objects to the ALJ's discussion of Dr. Leizer's opinion. Specifically, she contends the ALJ failed to address Dr. Leizer's opinion that "changes in [her] work settings would likely be difficult for her given her emotional illness that is compromising her concentration." (R. 97.)

While the court agrees with Tara that the ALJ did not expressly address this opinion, it disagrees that it is left to guess as to why he did not adopt it. As discussed above, the ALJ did a thorough job analyzing Tara's medical records, including the extent of her abilities related to concentration, persistence, and pace, and arrived at an RFC appropriately accounting for those limitations. Given that the ALJ explained how he arrived at his conclusion, the court is able to discern and review his analysis of Dr. Leizer's opinion.

It is clear from his analysis and discussion that he rejected this small portion of Dr. Leizer's opinion because his review of the evidence supported a different conclusion. While the court would have preferred a more direct assessment, the ALJ is not obligated to address every fact and medical opinion in the Record. *See Blackwell v. Colvin*, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2013); *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."). To require him to do so would be unreasonable and produce an unwieldy decision that is bogged down by predominantly extraneous and irrelevant information. Rather, the court has reviewed his opinion, finds that is supported by substantial evidence, and accordingly will overrule Tara's objection.

The remainder of Tara's objection amounts to a general objection and is therefore no objection at all. Under the applicable guidelines, the court has reviewed the R&R for clear error and finds none. Tara's first objection will be overruled in its entirety.

## B. Objections Related to the ALJ's Function-by-Function Analysis

In her second objection, Tara primarily argues that the ALJ failed to account for how her fatigue and episodes of pain would impact her ability to work a full workday.

As it relates to her fatigue, Tara argues that her anemia (which the ALJ found was a severe impairment) and attendant fatigue may require her to take breaks. But although the ALJ found that Tara suffered from anemia, he also noted that she has only been required to take iron infusions on four occasions. (R. 49; *see also* R. 661, 925, 1594, 2087–2102.) *See, e.g.*, *Dunn v. Colvin*, 607 F. App'x 264, 274–75 (4th Cir. 2015) (noting that conservative treatment can support a finding that a claimant is not as limited as she claims). He further noted that her fatigue, at times, was noted as mild. Later in his opinion, the ALJ discussed Tara's "many complaints of pain, weakness, fatigue, and dizziness," but concluded that the evidence in the record "supports the claimant can perform a range of sedentary exertional activity." (R. 55.) Thus, it is apparent that the ALJ considered the evidence that Tara, on occasion, suffers from fatigue, but he found that it would not affect her ability to perform work that is classified as sedentary. Because Tara's objection simply asks this court to supplant her opinion of her abilities for the ALJ's reasoned conclusions, it must be overruled.

As it relates to pain in Tara's arm from her carpal tunnel syndrome and ulnar neuropathy, the ALJ noted that, following her May 28, 2020 surgery, she had significant relief from the pain in her right arm. (R. 55.) Although Tara complains of pain, her medical records

after that surgery were "generally normal." (*Id.*) Moreover, Tara does not cite to a single medical record that would support her claim that she suffers from intermittent pain that would impede her ability to work *in conformity with the RFC found by the ALJ*.[6] Accordingly, the court sees no reason to remand this case for the ALJ to consider medical evidence that not even Tara herself can marshal in her favor.

For these reasons, Tara's second objection will be overruled.

## C. Objections to Findings Regarding Subjective Complaints

It well-settled that the ALJ is tasked with, among other things, making credibility determinations. Under the applicable regulations:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

*Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). Second, once a claimant has "met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(2)). Under the regulations,

> this evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and

---

[6] It is important to recall that the ALJ limited Tara to sedentary with "no constant use of the hands" and required "the ability to changes [*sic*] positions as needed." (R. 51–52.) Insofar as Tara contends her hands hurt intermittently, she is precluded from work that would require her to use her hands constantly. It follows that she is limited to work that would allow her to rest her hands if and when they hurt.

> laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissue, redness, etc.), and any other evidence relevant to the severity of the impairment, *such as evidence of the claimant's daily activities*, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* (cleaned up) (emphasis added). In other words, after determining that a claimant has a medical condition that reasonably could cause the pain "in the amount and degree" she alleges, the ALJ must determine, based on the available evidence, whether a claimant actually suffers to the degree she claims.

At step one, the ALJ found that Tara's medically determinable impairments could reasonably be expected to cause her alleged symptoms; at step two, however, he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical and other record evidence, as explained in his written decision. (R. 52.)

Although there is ample evidence on each side of the ledger, substantial evidence is not a "large or considerable amount of evidence," *Pierce*, 487 U.S. at 565, but instead only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co.*, 305 U.S. at 229, and here the ALJ's findings regarding Tara's subjective complaints are supported by substantial evidence. Moreover, this court is *not* permitted to reweigh conflicting evidence—even where the court would have reached a different conclusion on the same record. *Hunter*, 993 F.2d at 34 ("It is not our place either to reweigh the evidence or to substitute our judgment for that of the [Commissioner] if that decision was supported by substantial evidence."). Rather, its only role is to determine whether sufficient evidence supports the ALJ's conclusion and ensure that the ALJ correctly applied the law.

But Tara contends that the R&R failed to acknowledge the ALJ's purported legal errors "for failure to address significant evidence contradictory to his findings as required under the regulations." (Pl.'s Obj. at 6.) Tara's objection under this heading twice points this court to pages of her summary judgment brief, apparently inviting this court to first select which "overwhelming significant evidence contrary to the ALJ's findings that the ALJ either ignored or attempted to minimize in his decision" (*id.* at 6 (citing Pl.'s Br. Supp. Mot. Summ. Judg. at 34)) and which "significant medical evidence contrary to the ALJ's findings" the ALJ "ignore[ed]" (*id.* at 8 (citing Pl.'s Br. Supp. Mot. Summ. J. at 19)) and then formulate objections for her. She elsewhere makes the conclusory statement that the ALJ "failed to account for significant other testimony from the claimant," without specifying it.[7] This amounts to an impermissible general objection to the R&R as a whole—which is the same as an objection at all—and is simply an invitation for the court to reweigh the evidence. Moreover, Judge Ballou already listed and dealt with the pieces of medical evidence that Tara claims the ALJ "ignored or minimized." (*See* R&R at 16, n.11.)

In making his subjective allegations determination, the ALJ recognized Tara's many mental and physical complaints. (*See* R. 53–58.) Although sheer volume is not necessarily indicative of thorough analysis, the court notes that this section of the ALJ's decision devotes five single-spaced pages, detailing Tara's various conditions as they relate to her subjective complaints. (*Id.*) This accurate review satisfies the substantial evidence standard, and the court was not "left to guess" how the ALJ made his RFC determination. *Mascio*, 780 F.3d at 637.

---

[7] Tara's apparent attempt at specificity here—"ignoring plaintiff's testimony and the paperwork completed by plaintiff in explaining the limited extent she actually performs the daily activities referenced by the ALJ and the ALJ failed to consider the extent to which plaintiff actually performed the cited activities (Tara's Obj. at 7)— falls short of asserting a specific objection.

The court notes that, in support of his subjective-allegations determination relating to her mental health issues, the ALJ acknowledged Tara's history of mental illnesses but also considered that, at therapy sessions, Tara frequently had "good eye contact, cooperative attitude, normal speech, and linear thought and content" (R. 437); that her sleep had improved after she stopped working outside the home (R. 438); that a mental status exam was generally within normal limits (R. 478–49); that, after admission to the hospital in September 2019 for suicidal ideation and cutting behaviors, her ability to focus and restlessness had improved significantly (R. 1167); that her mood improved and that she was feeling less anxious after therapy and EMDR treatment (R. 1992); and that she was move involved with her church and planned to begin drama ministry (R. 2226). (*See* R. 53–54.) On the basis of this evidence, which is interspersed with substantial evidence pointing in the *other* direction, the ALJ concluded that "her alleged degree of limitation is not entirely consistent with the evidence." (R. 54.) He acknowledged her mood fluctuation, irritability, and anger issues, but pointed to treatment notes showing that she was cooperative, had adequate memory, mostly good attention and concentration, and was able to care for her personal needs; active in her church community; and was at one point working on a part-time basis. (*Id.*) And because the findings of the ALJ are supported by substantial evidence, they are conclusive. *See Perales*, 402 U.S. at 390.

As to Tara's physical subjective complaints, the ALJ again acknowledged Tara's issues and complaints, but noted that her chest pain resolved (R. 663) and that, after an iron infusion in August 2019 her dizziness stopped (R. 661); that her cardiac testing was normal after feeling mild chest pressure and body pain (R. 661–62); that, after an iron infusion in March 2020 (*see* R. 2087–2102) she complained a few months later of only mild, i.e., improving, fatigue (R.

1590); that, at a follow up appointment, her hemoglobin levels improved and her ferritin became stable (R. 2091); that, after her left carpal and cubital tunnel release in May 2020 (R. 2073, 2167), she had significant relief of her numbness, tingling, and pain (R. 2073); and that by July 2020 she was able to perform tasks again with her left hand, albeit limited (R. 2070). (R. 54–5.) Based on this evidence, the ALJ found that Tara's subjective physical health allegations were not entirely consistent with the record. (R. 55.) He acknowledged that, despite her many complaints of pain, fatigue, and weakness, her physical examinations of record have been generally normal. (*Id.*). He explained how her four iron infusions had improved her symptoms, and that he accounted for her fatigue by limiting her to sedentary exertional activity. (*Id.*) He also detailed how her carpal tunnel symptoms improved after surgery. (*Id.*)

The court is simply not empowered to re-weigh the evidence or make credibility determinations, *see Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589), and it will not do so here. The court must "uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by substantial evidence." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Tara simply disagrees with the ALJ's findings, but this court finds that they are supported by substantial evidence. As to her general objections, the court will not make Tara's objections for her, or search the record for evidence that supports her general objections. The ALJ's determinations relating to Tara's subjective complaints are supported by substantial evidence. Accordingly, this part of Tara's objection will be overruled.

The thrust of the remainder of Tara's objection under this heading is that the ALJ made a legal error—and the R&R endorsed it—because, when determining whether Tara suffers to

the degree she alleges, the ALJ considered Tara's routine, non-work activities without considering *the extent to which* Tara performs them.

Importantly, the ALJ did not rely solely on Tara's routine, non-work activities when evaluating the veracity of her subjective complaints. As explained above, he also considered the medical evidence of record and the state agency physicians' opinions, expressly finding that Tara's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." (R. 52.)

As to her objection that the ALJ failed to properly consider Tara's non-work activities, Tara first says that the R&R erred in concluding that *Brown v. Commissioner of Social Security Administration*, 873 F.3d 251, 269–70 (4th Cir. 2017), "does not apply to plaintiff's case."

But *Brown* is distinguishable because, here, the ALJ did not consider only Tara's daily activities when determining her RFC; he also considered the extensive medical records as well as the opinions of the state agency physicians. (R. 56–58.) In so doing, the ALJ built an accurate logical bridge between the evidence and his conclusion that was lacking in *Brown*. *See Brown*, 873 F.3d at 269. Nowhere does the ALJ claim that Tara's daily activities alone—limited as they may be—mean that she has the RFC to perform work for eight hours per day, five days per week. Instead, the ALJ reflected that "while the claimant had ongoing complaints of mood fluctuation, irritability, and anger issues, her treatment notes show that she was cooperative, had adequate memory, had mostly good attention and concentration, and was able to care for her personal needs." (R. 54.) But before reaching this conclusion, as described above, the ALJ marched through conflicting medical evidence related to her impairments. (*See* R. 52-54.) The

ALJ here also did not fail to "acknowledge the limited extent of" Tara's activities, as the ALJ did in *Brown*, 873 F.3d at 269. To the contrary, the ALJ acknowledged that Tara claimed to have "difficultly sleeping, caring for her personal needs, taking medication without reminders, making meals, and completing household chores," and that "she does not like leaving the home and avoids people." (R. 52.) He also considered that she experiences dizziness and weakness causing her to need a cane, and that she testified that she has to lie down three to four times a day for 20 to 30 minutes at a time. (*Id.*) In *Brown*, on the other hand, the ALJ "failed to acknowledge the limited extent of" the claimant's activities. *Brown*, 873 F.3d at 269. Also, unlike *Brown*, the ALJ here did not "reject the consistent opinions of" five treating and examining sources without providing a detailed explanation of why he favored a state agency physician who had never examined the claimant but opined based on review of the claimant's medical records. *Id.* at 266.

Indeed, a fair review of the record indicates that the ALJ relied on Tara's activities of daily living—and the extent to which she performed them—as only part of his analysis, *cf. William T. v. Kijakazi*, No. 7:21cv00550, 2023 WL 2644283, at *7 (W.D. Va. Mar. 27, 2023) ("William's argument might have been persuasive if his activities of daily living were the *only* facts relied on by the ALJ."), and that his evaluation of those activities was proper. In reaching his conclusions, the ALJ relied on Tara's activities, her medical history, the well-reasoned opinions of several physicians, and Tara's own testimony. Although the ALJ's analysis on the score was not as thorough as this court would prefer, there is no indication that he cherry-picked from the record, misstated the extent of Tara's activities of daily living, *see, e.g., Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98–99 (4th Cir. 2020), or failed to consider the extent

to which she performed those activities, *see Woods v. Berryhill*, 888 F.3d 686, 695–96 (4th Cir. 2018). Accordingly, Tara's third objection is overruled.

## V. CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, Tara's objections will be overruled, Judge Ballou's R&R will be adopted in its entirety, the Commissioner's summary judgment motion will be granted, and Tara's will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 31st day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE